**Kenneth J. BROWN, Plaintiff,**

v.

**NORTHEAST NUCLEAR ENERGY CO. Defendant.**

**No. 3:98CV405 JBA.**

United States District Court, D. Connecticut.

March 31, 1999.

Ronald E. Lasky, Ronald E. Lasky & Associates, New London, for Kenneth J. Brown, plaintiff.

Duncan Ross MacKay, Alicia B. Davenport, Northeast Utilities, Hartford, for Northeast Nuclear Energy Co., defendants.

## RULING ON DEFENDANT'S MOTION TO DISMISS (Doc. # 13)

ARTERTON, District Judge.

This diversity and federal question action arises from defendant Northeast Nuclear's decision to deny plaintiff Kenneth Brown's access to its Millstone Nuclear Power plant and its subsequent decision to revoke his security clearance thereby resulting in his termination.

Northeast Nuclear has moved to dismiss the state law claims in Counts Three through Nine[1] on grounds of "field" or "conflict" preemption. Defendant also moves to dismiss Count One (Fourteenth Amendment claim), Count Two (enforcement of federal regulations), and Count Nine (third party beneficiary breach of contract claim) for failure to state a claim.

### Factual Background

Plaintiff Kenneth Brown, a resident of Kennesaw, Georgia was employed by Cataract, Inc. ("Cataract"), a subcontractor for Northeast Nuclear Energy Co. Under the terms of his employment contract with Cataract, he was assigned to work at Northeast Nuclear Energy Co.'s Millstone Nuclear Plant located in Waterford, CT. His contract with Cataract included a "Fitness for Duty" clause requiring him to "be fit for duty at any time that access to a nuclear site is requested" in accordance with 10 C.F.R. Part 26 and warning "[a]ny time an employee tests positive for alcohol or drugs he/she runs the risk of having their [sic] access denied or revoked . . . [and] can result in denial of access at future nuclear facilities for 3–5 years." (Compl. at ¶¶ 8–9). Although plaintiff does not allege a written contract with Northeast Nuclear, he describes Northeast Nuclear as his "joint employer along with Cataract" with knowledge of his contract with Cataract. (*Id.* at ¶ 36).

Northeast Nuclear maintained a "Fitness for Duty Manual" (FFDM) in compliance with the Nuclear Regulatory Commission's regulations governing nuclear power licensees, 10 C.F.R. Part 26. (*Id.* at ¶ 10). The FFDM sets forth the policies and procedures Northeast Nuclear has designed to ensure the "fitness for duty" of its employees as well as independent contractors. (*Id.* at ¶ 11). Relevant to this case, the FFDM outlines in detail the procedures for investigating an individual suspected of alcohol and/or drug use. First, the employee should if practical be observed by at least one supervisor, medical or security personnel. (*Id.* at ¶ 12). The employee should be asked for an explanation of the observed findings that suggest that the employee is not fit for duty. (*Id.*). Finally, the employee should be taken to a collection facility for "For Cause" testing. If the employee refuses to go, the employee should be taken home and notified that his or her refusal to undergo testing will result in an "administrative positive" equivalent to a positive test result. (*Id.*).

Northeast Nuclear revoked Mr. Brown's security clearance based on the events of October 28, 1996. (*Id.* at ¶ 35). On that

---

**1.** Since the Complaint is misnumbered and does not contain a Count Eight, the Court has construed Northeast Nuclear's motion to dismiss "Counts Three through Eight" as directed at Counts Three, Four, Five, Six, Seven and Nine.

date, Mr. Brown reported to work at the Millstone facility after an early morning flight from Georgia. (*Id.* at ¶ 15). At the time, he was feeling ill. (*Id.* at ¶ 16). Mr. Norman Williams, a security guard either employed or subcontracted by Northeast Nuclear, stopped him at the security checkpoint on his belief that he smelled alcohol on Mr. Brown's breath. (*Id.* at 17–18). Mr. Brown stated he was feeling ill and alleges that Mr. Williams failed to comply with the Fitness for Duty Manual requirements by: 1) not demanding that Mr. Brown remain at the checkpoint, 2) not arranging for a supervisor, medical or security personnel to observe or evaluate Mr. Brown, 3) not asking Mr. Brown for an explanation, 4) not escorting Mr. Brown directly to the collection facility for evaluation, and 5) not informing Mr. Brown that he was required to take an alcohol test and the consequences of failing to do so. (*Id.* at ¶¶ 15–24). Thereafter, Mr. Brown attempted to call his supervisor, Mr. Przekop for his observation of plaintiff's condition. (*Id.* at ¶ 26). In Mr. Przekop's absence, Mr. Brown's colleague, Mr. Clotfelter observed his condition and detected no smell of alcohol. (*Id.* at ¶ 26). Soon after, Mr. Brown returned to Mr. Williams and asked permission to see his doctor for his continuing feeling of illness. (*Id.* at ¶¶ 31–32). The doctor diagnosed Mr. Brown with shingles, and without any trace of alcohol, and Mr. Brown returned to his Connecticut residence. (*Id.* at ¶¶ 33–34). Later that afternoon, Northeast Nuclear notified Mr. Brown that his security clearance was revoked for 365 days as a result of the investigation of his suspected substance abuse which had been determined to be an "administrative positive." (*Id.* at ¶ 36). On October 31, 1996, Mr. Brown requested a review of this finding; on November 25, 1996, Northeast Nuclear notified Plaintiff that he would be denied access to the Northeast Nuclear for 365 days; on November 18, 1997, Mr. Brown unsuccessfully requested reinstatement of his security clearance and this suit followed. (*Id.* at ¶¶ 38–40).

In his eight count complaint, Plaintiff alleges that Northeast Nuclear by its conduct violated his right to substantive and procedural due process under the Fourteenth Amendment (Count One), violated the Code of Federal Regulations (Count Two), tortiously interfered with contractual rights (Count Three), breached an implied contract of employment (Count Four), intentionally and negligently inflicted emotional distress (Counts Five and Six), invaded his privacy by portraying him in a false light (Count Seven), and breached his contractual rights as a third party beneficiary (Count Nine).

**Standard for Motion to Dismiss**

In reviewing a motion to dismiss, the Court accepts the material allegations in the complaint as true. Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). At the Rule 12(b)(6) stage, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996). The Court's review is necessarily limited to the allegations contained or referenced within the four corners of Plaintiffs' complaint. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.1996) ("[i]n considering a motion to dismiss for failure to state a claim ... a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").

**Discussion**

**1. Federal law preemption of state law claims**

Northeast Nuclear contends that Mr. Brown's state law claims are preempted by

federal law for two reasons. First, because the "federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states," plaintiff's state law claims are preempted by federal law. *Pacific Gas & Elect. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752, (1983). Northeast Nuclear argues that Mr. Brown's state law claims relate to his security access and therefore fall within the preempted field of nuclear safety regulation. Secondly and alternatively, Northeast Nuclear claims "conflict" preemption to the extent that Northeast Nuclear could not simultaneously comply with the federally imposed fitness for duty regulations and the claimed state law duties.

■ "In the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively, . . . or to the extent it actually conflicts with federal law." *English v. General Elect. Co.,* 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). The Court's assessment of these "field" and "conflict" preemption claims is guided by Supreme Court precedent interpreting and applying the scope of federal field preemption in the area of nuclear radiological safety as related to state common law causes of action. *See e.g., English v. General Elect. Co.,* 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (nuclear power plant employee's state law claim for intentional infliction of emotional distress for retaliatory discharge was not preempted); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (decedent's estate allowed to recover punitive damage award against nuclear facility under state tort claim for radiological contamination injuries). While it is without dispute that "only the Federal Government should regulate the radiological safety aspects in the construction and operation of a nuclear power plant," *En-glish,* 496 U.S. at 80, 110 S.Ct. 2270 (1990) (internal citations omitted), this begs the question of where to draw the line between preempted and unpreempted state law claims. In making such determinations, the Supreme Court has either focused on the motivation underlying the state law, *see Pacific Gas,* 461 U.S. 190, 213, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) ("state moratorium on nuclear construction grounded in safety concerns falls squarely within the prohibited field"), or the "effect of the state law on the decisions made by those who build or operate nuclear facilities concerning radiological safety levels." *English,* 496 U.S. at 85, 110 S.Ct. 2270. In examining the effects of a state law on radiological safety decisions, the domain of preemption has been restricted to those state laws with "direct and substantial effects." *Id.* at 85, 110 S.Ct. 2270 ("recognizing that the claim for intentional infliction of emotional distress at issue here may have some effect on these decisions, because liability for claims like petitioner will attach additional consequences on retaliatory conduct by employers, . . . this effect is neither direct nor substantial enough to place petitioner's claim in the pre-empted field.")

■ In this case, the state law underpinning Mr. Brown's claims of breach of implied employment contract, tortious interference with contractual rights, intentional infliction and negligent infliction of emotional distress, are not motivated by an objective of regulating nuclear safety, but rather the state's protection of the rights of employees, including those who work at federally-licensed nuclear power plants. While Mr. Brown's employment claims may have some effect on Northeast Nuclear's procedures for implementing its FFDM, absent a more fully developed record, such effect is not generically the type that necessarily is direct or significant enough to fall within the field of preemption created by the federal government's interest in nuclear safety.

█ Finally, while Northeast Nuclear asserts that it is unable to simultaneously comply with federal regulations and the duties imposed by plaintiff's state law claims, it fails to identify any real or potential conflict. Although such conflict may become more evident with further case development, at this early juncture, however, Northeast Nuclear has failed to expose any such conflict.

Defendant relies on three cases to support its claim of conflict preemption. In *Hanni v. Cleveland Elec. Illuminating Co.*, 87 Ohio App.3d 295, 622 N.E.2d 340 (1993), the Ohio appeals court upheld the trial court's finding on summary judgment that the NRC's access regulations preempted an employee's state law actions for wrongful discharge, defamation and intentional infliction of emotional distress. However, *Hanni* is factually distinguished from Mr. Brown's claim in that in *Hanni* "there [was] no genuine issue in dispute as to whether [nuclear power plant] properly terminated [employee] pursuant to federal regulations." Therefore, *Hanni* does not stand for the expansive proposition that all state law claims related to nuclear facility access are preempted, but is limited to cases where employer compliance with federal regulations is undisputed. Here, not only does Mr. Brown claim that the regulations were not followed, he also alleges he was not drunk and that the fitness for duty provision in his written contract with Cataract and his implied contract with Defendant were not followed.

The other two cases on which Northeast Nuclear relies both preceded *English* and are therefore of limited precedential value. In *Alverado v. Washington Public Power Supply Sys.*, 111 Wash.2d 424, 759 P.2d 427 (1988), the Washington Supreme Court refused to consider a state constitutional challenge to a drug testing program implemented in response to a NRC policy statement. Similarly, in *Burns Int'l Security Services v. Commonwealth of Pa.*, 119 Pa. Cmwlth. 418, 547 A.2d 818 (1987) the appellate court found that a nuclear power plant employee's state discrimination law claim was preempted to the extent that federal NRC regulation establishing minimum physical and mental qualifications for safety reasons conflicted with state anti-discrimination requirements. Both these cases involved a direct and substantial conflict between the state law and the federal NRC safety regulations. In this case, it cannot be determined at this early stage that Mr. Brown's state law claims similarly conflict with federal safety regulations. The fact that such regulation will provide the relevant standard by which Northeast Nuclear's conduct will be assessed does not necessarily support the conclusion that Mr. Brown's state law claims are preempted.

Because Mr. Brown may seek to enforce his state contractual and tort rights as an employee to the extent such enforcement does not conflict with the federal regulations, on this undeveloped record, Northeast Nuclear's motion to dismiss Counts Three through Nine based on "field" or "conflict" preemption with federal radiological safety is denied.

## 2. Violation of the Code of Federal Regulation (Count Two)

█ Mr. Brown's allegation of Northeast Nuclear's violation of the Code of Federal Regulations assumes incorrectly that he has a private right of action to maintain such a claim. Mr. Brown bases his right to seek injunctive relief against Northeast Nuclear on 10 C.F.R. § 26.90. However, the Court does not find that such provision creates a private cause of action in light of Congress' express prohibition against private enforcement of the Atomic Enforcement Act in 42 U.S.C. § 2271(c), which provides that: "No action shall be brought against any individual or person for any violation under this chapter ... except by the Attorney General of the United States ...."

In light of this explicit language, the Court need not consider at length whether such a private cause of action might be

inferred under the four part test established in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). However, even an abbreviated *Cort* analysis supports the conclusion that no private remedy is available. The regulations and Act do not create a private remedy but rather 42 U.S.C. § 2271(c) expressly limits a private party's right to remedy violations. Second, the federal nuclear regulatory regime provides private parties with a limited administrative enforcement mechanism for alleged violations, 10 C.F.R. § 2.206 (any person may request the NRC to institute a proceeding to modify, suspend or revoke a license or other such action) and vests civil and criminal enforcement authority in the NRC under 42 U.S.C. § 2271(c). Third, while the Fitness for Duty Regulations may have some benefit for nuclear employees, the "especial class" for whom the regulations are designed is the general public at large, which is benefitted by enhanced safety from nuclear operations, and did not intend to establish a private right for nuclear industry employees. *See e.g., County of Suffolk v. Long Island Lighting, Co.,* 728 F.2d 52, 58 (2d Cir.1984) (county's complaint was preempted to the extent it sought to enforce NRC promulgated regulations); *Conway v. PECO Energy, Co.,* 1997 WL 34672 (E.D.Pa.1997)("Congress did not intend the federal courts to be available to hear cases by a plaintiff such as Conway for violation of NRC regulations of drug testing and security clearance investigations"). For these reasons, the Court finds Mr. Brown cannot state a private cause of action seeking to enforce the federal nuclear safety regulations and Count Two must be dismissed.

### 3. Third Party Beneficiary Contract Claim (Count Nine)

In Count Nine, Plaintiff claims breach of contract based on the premise that Northeast Nuclear's "Fitness for Duty Manual constitutes a contract by and between Defendant and Nuclear Regulatory Commission" and that "Plaintiff was therefore a contemplated and intended third-party beneficiary of the contract." (Compl. at ¶¶ 44,47).

In order to sustain a claim as a third-party beneficiary, Mr. Brown must establish a contract between Northeast Nuclear and the federal government to which he was the intended beneficiary. As Northeast Nuclear correctly points out, the issuance of a FFDM pursuant to a regulatory requirement does not evidence a contract between Northeast Nuclear and the NRC. *See* Black's Law Dictionary 910 (6th Ed.1990)("A license is not a contract between the state and the licensee, but is a mere personal permit.") In the Complaint, Mr. Brown does not allege any other contract between the NRC and Northeast Nuclear. Absent any reference to a specific contract between the NRC and Northeast Nuclear, Mr. Brown cannot assert a third-party beneficiary claim simply based on Northeast Nuclear's adoption of a fitness for duty policy required by federal regulations. *Compare Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979) (finding that although federal prisoner could not sustain a private right of action under a federal statute, he might nonetheless be able to assert third-party beneficiary right under a contract where the federal government purchased from the county housing and care for federal prisoners). Furthermore this claim in essence seeks to enforce a NRC regulation for the benefit of an intended beneficiary where such private causes of action are explicitly precluded by 42 U.S.C. § 2271(c). *See, e.g., Davis v. United Air Lines, Inc.,* 575 F.Supp. 677 (S.D.N.Y.1983) (dismissing plaintiff's third party beneficiary claim against employer for breach of a statutorily mandated contract term finding that such claim would allow plaintiff to make an "end-run" around a statute that otherwise precludes a private right of action).

Finally to the extent, Mr. Brown attempts to recast his third-party beneficiary breach of contract claim in terms of a contract between Northeast and Cataract,

(*see* Pl. Surreply Mem. at 4), a careful review of Count Nine indicates that Mr. Brown has plead this count solely in terms of the alleged contract between Northeast Nuclear and the NRC. (Compl. at ¶¶ 1–43, 44–49). The Complaint fails to allege the existence of any contract between Northeast Nuclear and Cataract. In fact, the only other contract alleged is Mr. Brown's contract with Cataract. (*Id.* at ¶¶ 6–8, 13).

Therefore, absent any other contractual relationship between Northeast Nuclear and the NRC, the Court finds that Mr. Brown has failed to state a claim on which relief may be granted him as a third party beneficiary and Count Nine must be dismissed.

### 4. Fourteenth Amendment Due Process Claim (Count One)

In Count One, Mr. Brown alleges Northeast Nuclear's decision to revoke his security clearance violated his right to (procedural and substantive) due process in violation of the Fourteenth Amendment. In *Catanzano v. Dowling,* the Second Circuit reiterated the fundamental principle that "the action inhibited by the [due process clause] of the Fourteenth Amendment is only such conduct as may fairly be said to be of the States." 60 F.3d 113 (2d Cir. 1995) citing *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Northeast Nuclear contends that Mr. Brown's due process claim fails to allege any facts that would remotely support a finding that Northeast Nuclear might qualify as a state actor.

■ "Characterizing a private party as a 'state actor' is a fact specific inquiry; and courts considering the issue typically look to such factors as the public function of the party's conduct, whether the private party acted under state compulsion, the nexus between the party's conduct and the state and whether the party's conduct was jointly undertaken with the state." *Logan v. Bennington College Corp.,* 72 F.3d 1017 (2d Cir.1995) (upholding grant of summary judgment on due process claim on grounds that private college did not transform into state actor by adopting sexual harassment policy as a result of its prior settlement of another harassment case with the state).

■ In support of his due process claim, Mr. Brown alleges that Northeast Nuclear "is engaged in the production and distribution of electricity from nuclear energy, and the related regulatory functions of Defendant's nuclear activities," (*see* Compl. at ¶ 3), and "is mandated and given power by the Nuclear Regulatory Commission to promulgate its own procedures for assuring that employees are fit for duty." (Compl. at ¶ 4). Citing to *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), Mr. Brown alleges that Northeast Nuclear thus "assumed the position of a state actor" "by creating, issuing and maintaining a Fitness for Duty Manual" as mandated by 10 C.F.R. Part 26. (Compl. at ¶ 5).

However, Mr. Brown's allegations contain no indicia of *state* action, particularly when based on Northeast Nuclear's failure to comply with *federal* regulations. Since Mr. Brown has alleged no other basis for his legal conclusion that Northeast Nuclear is a state actor for Fourteenth Amendment purposes, other than the conclusory statement that it is a state actor subject to federal regulation, the Court finds that the complaint fails to allege any facts from which it could be inferred that Northeast Nuclear is a state actor for purposes of the Fourteenth Amendment and accordingly defendants' motion to dismiss Count One is granted.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED in part and GRANTED in part. In summary, Count One (Fourteenth Amendment Due Process Claim), Count Two (enforcement of federal regulation) and Count Nine (third party beneficiary claim) are dismissed. However, at this stage, the Court cannot conclude that Plaintiffs' remaining state law claims

**124**

(Counts Three, Four, Five, Six, Seven) are necessarily preempted by federal law.

IT IS SO ORDERED.