OPINION
{¶ 1} This is a disability discrimination case. Appellant, Gary Minshall ("Minshall"), appeals the entry of summary judgment against him. Appellee FirstEnergy Nuclear Operating Company ("FirstEnergy") was Minshall's employer up until his discharge. Though named as a party, Appellee The Cleveland Illuminating Company ("CEI") is not at all connected with any of the operative facts herein.
 {¶ 2} Minshall was employed as a Senior Reactor Operator ("SRO") at the Perry Nuclear Power Plant when he was terminated on February 2, 2004. He had been employed there since August 18, 1982.
 {¶ 3} FirstEnergy is licensed by the Nuclear Regulatory Commission ("NRC") to operate the Perry Nuclear Power Plant.
 {¶ 4} In his complaint for disability discrimination, filed pursuant to Chapter 4112 of the Revised Code, Minshall alleged that he had the disability of alcoholism and that his employer failed to accommodate his disability.
 {¶ 5} The essence of Minshall's claim is that he was wrongfully discharged based on a statutory right created under Chapter 4112 of the Revised Code; and the essence of FirstEnergy's defense is that, whether Minshall has a valid disability claim or not, because of the overriding safety issues, federal law and regulations under the Atomic Energy Act[1]
preempt state law and control employee disciplinary procedures in a nuclear power plant. If FirstEnergy is correct in its assertion concerning federal preemption, federal law and regulations permit his employer to terminate him if he is in violation of those laws and/or regulations. We disagree that federal preemption exists in this case. We are mindful of the "tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a State may nevertheless award damages based on its own law of liability,"[2] but for the reasons indicated in the following analysis, we stand with the United States Supreme Court and "tolerate whatever tension there was between them."[3]
 {¶ 6} While we conclude that Minshall may proceed with his disability discrimination claim, our review is limited to the issue of federal preemption, and is not to be construed as a consideration of the merits of the disability discrimination claim. The disability discrimination claim is left for further adjudication by the trial court.
 {¶ 7} FirstEnergy and CEI filed a motion for judgment on the pleadings, which the trial court converted to a motion for summary judgment. In their motion, appellees contended that Minshall's claim for disability discrimination was preempted by federal law. In response, Minshall contended that he was qualified to perform the position of SRO, that his alcoholism was a disability, and that his employer failed to accommodate his disability. Minshall further argued that, before the question of federal law preemption is reached, his employer must demonstrate that he was a safety risk.
 {¶ 8} The record reflects two alcohol-related incidents, which affected Minshall's employment.
 {¶ 9} The first incident took place on September 17, 2002. As he drove into the vehicle inspection facility to begin his 4:00 p.m. shift, the security officer on duty decided to conduct a random search of his vehicle. An empty beer bottle was discovered in his car. He was administered blood alcohol content tests that same day, and a detectable level of alcohol was noted in his blood. The result was lower than a "positive test result," which would have resulted in immediate disciplinary action and possible termination. Minshall was immediately assessed by supervisors to determine his fitness for duty. He related that he had consumed at least eleven beers between midnight and 3:00 a.m. that same day. He was supposed to be on call for emergency responses as of 8:00 a.m. that day. His supervisors determined that he was potentially unsuitable to be fit for duty both during the "on call" period (8:00 a.m. to 4:00 p.m.) and during his regular shift that day (4:00 p.m. to midnight). As a result of this incident, Minshall's unescorted access to vital areas of the plant was denied for a four-week period, but then restored after he completed a psychological evaluation and FBI background check.
 {¶ 10} The second incident took place one year later, on September 25, 2003. Minshall fell asleep while driving and ran into a building near his home. He admitted to consuming approximately eleven beers during the ten hours prior to the accident. He was not on duty during this period. A blood test administered at the hospital gave a reading of .20% blood alcohol content. He was cited for operating a vehicle while under the influence and failure to control his vehicle. He was convicted in municipal court of the lesser offense of disregard for safety and failure to control, because the blood draw at the hospital was faulty. On October 1, 2003, his unescorted access to vital areas of the plant was denied. Minshall was required to undergo a psychological evaluation, as a result of which he was deemed unacceptable for unescorted access to protected or vital areas. The psychologist recommended in his report that Minshall be reevaluated after one year "in order to determine whether he is psychologically acceptable to be considered for restoration of his unescorted access to a nuclear power plant." On February 2, 2004, he was terminated due to his "inability to maintain unescorted access to our plant."
 {¶ 11} The record reflects that Minshall worked outside the protected or vital areas during the periods September 17, 2002 through October 17, 2002, and September 26, 2003 through February 2, 2004.
 {¶ 12} Minshall raises two assignments of error, the first of which is:
 {¶ 13} "The trial court committed reversible error by granting defendants' motion for summary judgment."
 {¶ 14} Pursuant to Civ.R. 56(C), summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. A party seeking summary judgment must point specifically to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.[4] In response, the nonmoving party must set forth specific facts that demonstrate that there is a genuine factual issue to be tried. He or she may not rest on conclusory statements or the bare allegations of the complaint.[5]
 {¶ 15} The trial court converted FirstEnergy's motion for judgment on the pleadings to a motion for summary judgment. In doing so, the trial court erroneously permitted matters outside the pleadings to be considered. In the case of Peterson v.Teodosio, the Supreme Court of Ohio held that a motion for judgment on the pleadings pursuant to Civ.R. 12(C) allows the trial court to consider only the allegations in the pleadings, and not matters outside the pleadings.[6] As stated by that court:
 {¶ 16} "Since the judgment below was entered upon the pleadings, pursuant to Civ.R. 12(C), appellee herein was entitled to have all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in her favor as true. 2A Moore's Federal Practice 2342, Paragraph 12.15; 5 Federal Practice and Procedure, Wright and Miller, Section 1368. Civ.R. 12(C) is a continuation of the former statutory practice and presents only questions of law, and determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings."[7]
 {¶ 17} Anderson's Ohio Civil Practice notes that Ohio, unlike the federal rules, does not have a provision for automatic conversion of a motion for judgment on the pleadings, if accompanied by matters outside the pleadings, to a motion for summary judgment.[8] "A defense in bar (on the merits) accompanied by affidavits or outside materials, if served after the pleadings are closed, should be served in the form of a motion for summary judgment in order that the opposing party may be protected by the safeguards governing the motion for summary judgment."[9]
 {¶ 18} Civ.R. 12(B) does provide for conversion to a motion for summary judgment where a party has filed a motion pursuant to Civ.R. 12(B)(6), asserting that the plaintiff has failed to state a claim upon which relief can be granted, and matters are presented outside the pleading and not excluded by the court. In such a case, "the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."[10]
 {¶ 19} Nevertheless, Minshall did not bring this irregularity in procedure to the attention of the trial court, though he now asserts it as part of his first assignment of error. However, having failed to raise this irregularity in the trial court, we deem it to be waived.[11] In fact, once the trial court converted the motion for judgment on the pleadings to a motion for summary judgment, Minshall responded accordingly, and submitted materials relevant to a motion for summary judgment. He did move to strike certain materials during the exercise, but the motion sought to exclude portions of the materials on the ground of hearsay, and not to rectify the trial court's procedural error.
 {¶ 20} Similarly, in the case of State ex rel. Nelson v.Russo, the Supreme Court of Ohio held that though the court of appeals erred in converting a motion to dismiss to a motion for summary judgment without formal notification to the parties, the error was considered harmless, because the appellate court could have taken judicial notice of the extrinsic materials and upheld the trial court's action without converting the motion to one for summary judgment.[12] That court found the procedure to be somewhat irregular, but it was not prejudicial error.[13]
 {¶ 21} In either case, whether our review considers the proceedings below in terms of motion for judgment on the pleadings or as a motion for summary judgment, our decision will rest upon whether FirstEnergy is entitled to judgment as a matter of law. Our standard of review is de novo.[14]
 {¶ 22} In one of its memoranda in support of its motion for summary judgment, FirstEnergy summed up its position as follows:
 {¶ 23} "[I]t is undisputed that [Minshall's] conduct, not his alcoholism, lead [sic] to his termination. Moreover, [Minshall] was unable to perform the essential functions of his job as a SRO with or without accommodation because he was forbidden from access to the vital areas of the plant where he would need to be in order to perform that position. Accordingly, [Minshall's] claim of handicap discrimination under Chapter 4112 fails as a matter of law."
 {¶ 24} In his response to the motion for summary judgment, Minshall admits that he is an alcoholic, that as of October 2003, he participated in treatment, attended two to three Alcoholics Anonymous meetings per week, did not drink, and satisfactorily performed his job, until he was terminated in February 2004. Though he had worked as an SRO in the operations department, it was normal procedure for someone in his position to work in the training building ("TEC") doing "impact reports" on a rotation basis. In fact, that is what FirstEnergy had him doing between October 2003 and February 2004. One does not require unescorted access to work in the training building.
 {¶ 25} FirstEnergy raises the issue of federal preemption and, in support thereof argues, "[b]ecause Mr. Minshall's claim — that he was disabled due to his alcoholism and that FirstEnergy failed to accommodate that disability — falls squarely within the `safety' aspect over which the federal government has occupied the entire regulatory field, he may not maintain this cause of action — disability discrimination under Ohio law."
 {¶ 26} The Supreme Court of Ohio addressed the issue of federal preemption with respect to nuclear power in the case ofCleveland v. Pub. Util. Comm.[15] The issue in that case was "whether the commission is preempted from ordering a shutdown of a nuclear generating plant by the Atomic Energy Act of 1954, as amended, Sections 2011 et seq., Title 42 of the U.S. Code."[16] That court noted that "[t]he doctrine of preemption is premised on Clause 2 of Article VI of the United States Constitution. The doctrine forbids state regulation of an area if there is explicit or implicit exclusion of state regulation by Congress over a particular subject matter."[17] The court held that "the federal government has preempted state regulation of the operation of nuclear power plants with respect to radiological hazards and safety considerations[.]"[18] However, the court noted that Congress has left intact the following subsection of the Atomic Energy Act since its enactment in 1954:
 {¶ 27} "`(k) Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.'"[19]
 {¶ 28} Thus, the Supreme Court of Ohio, in the Cleveland
case, recognized the long-standing doctrine of federal preemption in the area of nuclear safety, as well as the rule of judicial analysis that divides federal preemption into express preemption and implied preemption. In general, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that particular field is pre-empted."[20] With respect to express preemption in the field of nuclear safety, the United States Supreme Court stated that the "Federal Government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States."[21]
 {¶ 29} Notably, in decisions dating back to McCulloch v.Maryland, the United States Supreme Court has stated that the Supremacy Clause would allow the court to proscribe vast numbers of state laws if they create an "interference" with federal law.[22] More recently, that court has made clear that the federal government has the power under the Commerce Clause to preempt state tort claims.[23] Due to principles of federalism, however, Congress has not chosen to exercise its plenary power to preempt state tort claims.[24]
 {¶ 30} In the instant case, we are dealing with the Atomic Energy Act and the fact that Congress has not expressly proscribed state law claims.[25] Thus, we are dealing with implied federal preemption, which is further broken down into (1) federal preemption of a given field and (2) federal preemption by virtue of a conflict with federal law.[26]
 {¶ 31} In the case of English v. General Electric Co., the United States Supreme Court summed up the rules regarding implied "field" preemption and implied "conflict" preemption:
 {¶ 32} "[I]n the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively, * * * or to the extent it actually conflicts with federal law."[27]
 {¶ 33} As to implied "field" preemption, the United States Supreme Court has stated:
 {¶ 34} "Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because `(the) scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because `the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because `the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.'"[28]
 {¶ 35} As for implied federal preemption by virtue of a "conflict" with federal law, "[e]ven when federal law has not completely displaced state law, state law is nullified if it either conflicts with federal law, an event which occurs when compliance with both state and federal law is impossible, or is an obstacle to the accomplishment and execution of the goals of the federal law."[29]
 {¶ 36} The English case was discussed at length in the case of Brown v. Northeast Nuclear Energy Co.,[30] which is a case with facts similar to the instant case.
 {¶ 37} In the Brown case, plaintiff was employed by a subcontractor of a nuclear power plant licensee. When reporting to the plant for work one day, a security guard stopped him, because he believed that Brown had alcohol on his breath. Brown told the guard that he felt sick that day. Unable to reach his supervisor, Brown asked the guard for permission to see his own doctor. His doctor diagnosed him with shingles, with no trace of alcohol. Northeast Nuclear informed Brown later that day that his access to the plant was denied for three hundred sixty-five days, because of his suspected substance abuse. Brown sued his employer and Northeast Nuclear. A motion to dismiss for failure to state a claim upon which relief can be granted was filed by the defendants. The motion contended that Brown's state law claims were preempted by federal law, because they related to his security access and, therefore, fell within the preempted field of nuclear safety regulation. It also argued for a "conflict" preemption, as stated in the English case, such that Northeast Nuclear could not simultaneously comply with federal regulations regarding fitness for duty regulations and state law duties, and, therefore, the state law duties were preempted due to the conflict.[31] The court in Brown analyzed the decision of the United States Supreme Court in English. The court stated:
 {¶ 38} "While it is without dispute that `only the Federal Government should regulate the radiological safety aspects in the construction and operation of a nuclear power plant,' English,496 U.S. at 80 (1990) (internal citations omitted), this begs the question of where to draw the line between preempted and unpreempted state law claims. In making such determinations, the Supreme Court has either focused on the motivation underlying the state law, see Pacific Gas [461 U.S. at 213] (`state moratorium on nuclear construction grounded in safety concerns falls squarely within the prohibited field'), or the `effect of the state law on the decisions made by those who build or operate nuclear facilities concerning radiological safety levels.'English, 496 U.S. at 85. In examining the effects of a state law on radiological safety decisions, the domain of preemption has been restricted to those state laws with `direct and substantial effects.' Id. at 85."[32]
 {¶ 39} The court in Brown concluded that the state interests to be protected related to employee rights and were not motivated by an objective to regulate nuclear safety:
 {¶ 40} "In this case, the state law underpinning Mr. Brown's claims of breach of implied employment contract, tortious interference with contractual rights, intentional infliction and negligent infliction of emotional distress, are [sic] not motivated by an objective of regulating nuclear safety, but rather the state's protection of the rights of employees, including those who work at federally-licensed nuclear power plants."[33]
 {¶ 41} The court observed that the effect of such state claims "is not generically the type that necessarily is direct or significant enough to fall within the field of preemption created by the federal government's interest in nuclear safety."[34]
 {¶ 42} Finally, under this prong of the court's decision, the court in Brown distinguished two cases that dealt with state law actions for wrongful discharge in the context of federal preemption. Both of these cases are relied upon by FirstEnergy in its argument. First, the case of Hanni v. Cleveland Elec. Illum.Co.[35] was distinguished on the basis that in Hanni
"`there (was) no genuine issue in dispute as to whether (nuclear power plant) properly terminated (employee) pursuant to federal regulations.'"[36] The facts in the Hanni case were that, two months prior to his discharge, plaintiff was arrested for two felonies and subsequently charged with six traffic offenses, including driving under the influence of alcohol. A further investigation revealed that he had been driving without a license for at least three years, which meant that he was driving his personal vehicle onto the plant premises without a driver's license. In Hanni, the Eighth Appellate District held that "a review of the record discloses that CEI was well within its rights to revoke appellant's access authorization pursuant to Section 10.25(a)(3), Title 10, C.F.R., after a review of the guidelines presented in Sections 10.10 and 10.11, Title 10, C.F.R."[37]
 {¶ 43} The second case distinguished by the Brown Court is that of Burns Internatl. Sec. Servs. v. Pennsylvania.[38]
The plaintiff in that case was a watchman who was subject to Nuclear Regulatory Commission regulations concerning her ability to perform her duties. She suffered from the medical condition of endometriosis and, as a result, was not physically able to work overtime, a requirement of the job. After she was terminated, she sued on the basis that her employer discriminated against her for her disability/handicap.[39] The Brown Court distinguished this case on the basis that "the appellate court found that a nuclear power plant employee's state discrimination law claim was preempted to the extent that federal NRC regulation establishing minimum physical and mental qualifications for safety reasons conflicted with state anti-discrimination requirements."[40] The Brown Court observed that the facts of the Burns case presented a "direct and substantial conflict between the state law and the federal NRC safety regulations."[41]
 {¶ 44} In summary of the foregoing cases regarding federal preemption, in the absence of express statutory language to dictate otherwise, the Brown and English cases find implied federal preemption where Congress has manifested an intention to regulate the field exclusively (e.g. construction of nuclear facilities) or where state law is in conflict with federal law. In analyzing whether state law was in conflict with federal law, the Brown case held that the effect of the state law on federal law must be "direct and substantial."[42] This rule would allow cases dealing with breaches of employment contracts, tortious interference with contract rights, and intentional and negligent infliction of emotional distress to proceed apart from the doctrine of federal preemption, because, in the words of theBrown Court, they "are not motivated by an objective of regulating nuclear safety, but rather the state's protection of the rights of employees, including those who work at federally-licensed nuclear power plants."[43] The Supreme Court of the United States upheld this reasoning, because, in the case of Silkwood v. Kerr-McGee Corp., it held that the plaintiff could pursue her claim for punitive damages resulting from unsafe working conditions:
 {¶ 45} "No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a State may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension there was between them. We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept."[44]
 {¶ 46} Likewise, a claim for disability discrimination fits within the holding of the Brown case, because it too seeks to vindicate an employee's right to be free of unlawful discrimination. This is true notwithstanding the Burns case, where the appellate court in Pennsylvania found that the claim for disability/handicap discrimination was preempted by federal law, because in that case there was a specific regulation governing the physical and mental qualifications of security personnel.[45]
 {¶ 47} In the instant case, there is no specific regulation offered in the record as to the qualifications for an SRO. There is mention in an affidavit by Brenda Alvord, an HR representative of FirstEnergy, that Minshall "could not perform the essential functions of his job as a Senior Reactor Operator because he could not meet the NRC requirements necessary to obtain unescorted access to the vital areas of the plant." In addition, FirstEnergy, in one its supporting memoranda, states that Minshall "was unable to perform the essential functions of his job as a SRO." However, nowhere in the record are we provided with specifics as to what the essential functions of the SRO job consisted of. The letter dated February 2, 2004, terminating Minshall, states that "[a]s a result of your inability to maintain unescorted access to our plant, your employment with FirstEnergy Nuclear Operating Company is being terminated effective February 2, 2004." The meaning of the letter is clear enough, but what is not clear is whether having unescorted access to the vital areas of the plant is an essential function of the job of SRO. Recall that the record does demonstrate that Minshall was working for some months before he was terminated in the capacity as an SRO, after his unescorted access had been terminated. As in the Hanni case, FirstEnergy may have had grounds to revoke his unescorted access in accordance with the guidelines of 10 C.F.R. 10.11, but this is not conclusive as to whether he was then unable to perform as an SRO where the record is devoid of evidence to tell us what those essential functions consisted of.
 {¶ 48} FirstEnergy also argues that "Mr. Minshall's lack of fitness for duty, which he clearly alleged in his complaint, falls squarely within the pre-emptive sweep of federal law." FirstEnergy points to the fitness for duty regulations, specifically 10 C.F.R. 26.1, et seq., to argue that Minshall was in violation of those regulations; that those regulations preempt the field of state disability claims; and that his claim for disability discrimination cannot survive such federal preemption. A review of those regulations, however, demonstrates that they are intended as a promulgation of standards by the NRC to its licensees to create fitness-for-duty programs that would guide its employees. They are not themselves the regulations that govern the fitness for duty of the employees at the Perry Nuclear Power Plant. As stated in 10 C.F.R. 26.1:
 {¶ 49} "This part prescribes requirements and standards for the establishment and maintenance of certain aspects of fitness-for-duty programs and procedures by the licensed nuclear power industry, and by licensees authorized to possess, use, or transport formula quantities of strategic special nuclear material (SSNM)."
 {¶ 50} It is further stated in 10 C.F.R. 26.2, subsection (a), that, "[e]ach licensee shall implement a fitness-for-duty program which complies with this part."
 {¶ 51} There is a reference in a memorandum of M.T. Gilday-Gulliford, a nuclear analyst, to an "FFD Program" instituted by FirstEnergy. This memorandum is dated September 19, 2002 and narrates specific violations of the "FFD Program" with respect to Minshall's incident in 2002. However, there is nothing in the record with respect to his incident in 2003 to the effect that he was in violation of FirstEnergy's "FFD Program."
 {¶ 52} Lacking an adequate record as to what the essential functions of Minshall's job as an SRO consisted of, or what specific regulations he was in violation of, we are unable to agree with FirstEnergy that federal preemption is applicable here. Moreover, we are of the opinion that Congress did not intend, either expressly or impliedly, to preempt state disability claims in promulgating statutes and regulations governing nuclear facilities, but left such claims, dealing as they do with employee's rights, to the states for adjudication.
 {¶ 53} Therefore, we find that Minshall's first assignment of error has merit.
 {¶ 54} Minshall's second assignment of error is as follows:
 {¶ 55} "The trial court committed reversible error by denying plaintiff's motion to strike."
 {¶ 56} We review this assignment of error according to an abuse of discretion standard. Matters of admission or exclusion of evidence in the trial court are subject to reversal on appeal only if there is an abuse of discretion by the trial court.[46]
 {¶ 57} "The trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse that materially prejudices the opposing party. * * * In the application of the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court."[47]
 {¶ 58} Minshall argues that certain documents attached as Exhibits E and F to FirstEnergy's second reply memorandum in support of their motion for judgment on the pleadings, which motion was converted to a motion for summary judgment, contain hearsay and were not authenticated. On this point, the trial court said, "[t]he documents contained in these exhibits were authenticated by Maureen Gilday-Gulliford, Nuclear Analyst the Perry Nuclear Power Plant, through her Affidavit, which was also attached to Defendant's Second Reply Memorandum. Further, the documents contained within said exhibits are not offered for their truth, but merely as a demonstration of the information that Defendant had before them when deciding to terminate Plaintiff."
 {¶ 59} While we disagree with the trial court's analysis that the documents were not offered for their truth, nevertheless, they were authenticated by the affidavit of Gilday-Gulliford. In her affidavit, she stated that exhibit E constituted business records kept and maintained in the ordinary course of business by FirstEnergy, and that exhibit F was a true and accurate copy of a psychologist's report. As business records, therefore, they were documents that are admissible in support of a motion for summary judgment. Civ.R. 56(C) permits the trial court to consider "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact" in its decision whether to render summary judgment. The rule goes on to say that "[n]o evidence or stipulation may be considered except as stated in this rule." The documents in question, having been authenticated through Gilday-Gulliford's affidavit, were admissible business records. Therefore, there was no abuse of discretion on the part of the trial court in denying Minshall's motion to strike the documents in question.
 {¶ 60} The second assignment of error is without merit.
 {¶ 61} For the reasons indicated, the summary judgment entered by the trial court is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
Ford, P.J., O'Toole, J., concur.
[1] Atomic Energy Act of 1954, Sections 2011-2296, Title 42, U.S. Code.
[2] Silkwood v. Kerr-McGee Corp. (1984), 464 U.S. 238, 256.
[3] Id.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
[5] Smith v. L.J. Lewis Ent., Inc., d.b.a. Action EmergencyAmbulance (Sept. 28, 2001), 11th Dist. No. 2000-T-0052, 2001 Ohio App. LEXIS 4413, at *12-14.
[6] Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 166.
[7] Id. at 165-166.
[8] Anderson's Ohio Civil Practice, vol. 4, § 152.15, at 347.
[9] Id.
[10] Civ.R. 12(B).
[11] See State v. Lee, 11th Dist. No. 2002-T-0168,2004-Ohio-6954, at ¶ 57-58.
[12] State ex rel. Nelson v. Russo (2000), 89 Ohio St.3d 227,228.
[13] Id.
[14] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
[15] Cleveland v. Pub. Util. Comm. (1980),64 Ohio St.2d 209.
[16] Id. at 210.
[17] (Citations omitted.) Id. at 212.
[18] Id. at 215.
[19] Cleveland v. Pub. Util. Comm., supra, at 212, quoting Atomic Energy Act of 1954, section 2021(k), Title 42, U.S. Code.
[20] Silkwood v. Kerr-McGee Corp., 464 U.S. at 248.
[21] Pacific Gas Elec. Co. v. State Energy ResourcesConservation and Dev. Comm. (1983), 461 U.S. 190, 213.
[22] McCullogh v. Maryland (1819), 17 U.S. (4 Wheat.) 316;Gibbons v. Ogden (1824), 22 U.S. 1.
[23] Gonzalez v. Raich (2005), 125 S.Ct. 2195, 2205-2206.
[24] Cipollone v. Liggett Group, Inc. (1992), 505 U.S. 504,531-533 (Blackmun, J., concurring in part, concurring in the judgment in part, and dissenting in part).
[25] Silkwood v. Kerr-McGee Corp., 464 U.S. at 251.
[26] English v. Gen. Elec. Co. (1990), 496 U.S. 72, 78.
[27] Id.
[28] Fidelity Federal Savings Loan Assn. v. De La Cuesta
(1982), 458 U.S. 141, 153, quoting Rice v. Santa Fe ElevatorCorp. (1947), 331 U.S. 218, 230.
[29] (Citation omitted.) Burns Internatl. Sec. Servs., Inc. v.Pennsylvania (1988), 119 Pa. Commw. 418, 547 A.2d 818, 821.
[30] Brown v. Northeast Nuclear Energy Co. (Conn. 1999),48 F.Supp.2d 116.
[31] Id. at 119-120.
[32] Id. at 120.
[33] Id.
[34] Id.
[35] Hanni v. Cleveland Elec. Illum. Co. (1993),87 Ohio App.3d 295.
[36] Brown v. Northeast Nuclear Energy Co.,48 F. Supp.2d at 121, quoting Hanni v. Cleveland Elec. Illum. Co.,87 Ohio App.3d at 304.
[37] Hanni v. Cleveland Elec. Illum. Co., supra, at 301.
[38] Burns v. Internatl. Sec. Servs. v. Pennsylvania, supra.
[39] Id. at 819-820.
[40] Brown v. Northeast Nuclear Energy Co.,48 F.Supp.2d at 121.
[41] Id.
[42] Id.
[43] Id. at 120.
[44] Silkwood v. Kerr-McGee Corp., 464 U.S. at 256.
[45] Burns Internatl. Sec. Servs. v. Pennsylvania,547 A.2d at 822.
[46] Consol. Invest. Corp. v. Oak Real Estate, Ltd., 11th Dist. No. 2003-L-017, 2004-Ohio-1435, at ¶ 13.
[47] (Citations omitted.) Id.